

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BERNICE E. RAINS and ANITA HYCHE RAINS, | ) ) ) | Case no. **301-CV1778-H** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| JANI-KING OF NASHVILLE INC., a Texas corporation, | ) ) ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendant. | ) ) ) | |

Plaintiffs, BERNICE E. RAINS and ANITA L. HYCHE-RAINS, sue Defendant, JANI-KING OF NASHVILLE, INC., a Texas corporation, and allege:

### ALLEGATIONS COMMON TO ALL COUNTS

1. This Court has subject-matter jurisdiction pursuant to 28 U.S.C.§ 1332.

2. Plaintiffs, BERNICE E. RAINS and ANITA L. HYCHE-RAINS (hereinafter collectively "Rains"), are individuals, *sui juris*, residing in Antioch, Tennessee.

3. Defendant JANI-KING OF NASHVILLE, INC. is a corporation organized under the laws of the state of Texas (hereinafter "JKN"), with its principal place of business in Dallas, Texas.

4. Rains and JKN are parties to a franchise agreement providing for exclusive jurisdiction in Dallas County, Texas.

5. Defendant JKN was incorporated in Texas in 1991, does business under the trade and service mark "JANI-KING" and began selling franchises in 1993.

6. Within the JANI-KING franchise program, JKN contracts with franchisees for the performance of complete cleaning and/or maintenance related services, including commercial, industrial, institutional and residential cleaning and/or maintenance services, including carpet cleaning, hard floor care, trash disposal, window washing, wall cleaning, and other specialty cleaning services on a daily, weekly, or monthly schedule.

7. In consideration for royalties on franchisee revenues received, JKN offers varying amounts of commercial cleaning contracts as "Initial Business" to franchisees within an "Initial Offering Period."

8. JKN offers various "Plans" which vary in the amount of Initial Business offered to the franchisee, the period of time that Initial Business is offered and the amount of the Initial Franchise Fee charged to the franchisee. The greater the Initial Business, the more the Initial Franchise Fee. The gross monthly billing amount of the plan purchased remains the same for the duration of the twenty year agreement and any additional billings accepted by the franchisee requires the franchisee to pay a finder's fee.

9. JKN contracts with customers and then offers the franchisee an assignment of that contract whereby it designates the franchisee as the cleaning service provider and gives the franchisee the right to pursue collection of the charges due from the customers. Upon acceptance of the account the franchisee signs an account acceptance agreement.

10. JKN agrees to contract with customers at industry standard commercial cleaning production rates so that the franchisee will be able to service the customer and make a reasonable profit.

11. JKN also agrees not to solicit an account that the franchisee is servicing in an effort

to interfere with the franchisee's relationship with that customer. This is important because JKN stands to gain considerably from transfers of accounts to other franchisees through JKN's use of "Finder's Fees" charged to the transferee of such accounts whenever the transferee has already received all of their Initial Business.

12. JKN occasionally inspects the franchisee's accounts to ensure that the service of all accounts is being performed according to a Cleaning Schedule and to the JANI-KING performance standards. These standards may not alter the franchisee's fundamental status and rights under the franchise agreement.

13. On February 11, 1997, Rains contracted for the "E-4" Initial Plan, requiring that JKN offer Rains contracts totaling $4,000 in gross monthly billings to be reached within one hundred fifty days and replaced as required to maintain that level for the term of the Franchise Agreement. In consideration for this minimum business, Rains agreed to pay JKN an Initial Franchise Fee of $16,750, a ten percent royalty, a three percent accounting fee, a five percent fee to fulfill mandatory insurance requirements and, at JKN's discretion, a one percent advertising fee, for a total of eighteen percent.

14. Pursuant to paragraph 4.3.1 of the Franchise Agreement:

> Payment of this [Initial Franchise Fee] shall entitle Franchisee to the right to operate a JANI-KING franchised business in the Territory described herein. Franchisor will secure and offer commercial cleaning and maintenance contracts to the Franchisee that would provide initial gross monthly billings in accordance with the Plan purchased by Franchisee, and Franchisor agrees to offer to Franchisee the opportunity to service commercial cleaning and maintenance contracts which will provide gross monthly billings to Franchisee in the amount defined as the "INITIAL BUSINESS" in the Franchise Summary.

15. Pursuant to paragraph 4.17 of the Franchise Agreement:

> If an account cancels at no fault of yours before you service the account for 12 full months, the full gross monthly billing value of that account will be replaced within a reasonable period of time by another account or a combination of accounts, at no additional cost to you. This provision applies until you have serviced that replacement account for the remainder of the initial 12 month period. If any replacement account or combination of accounts has a greater value than the original account, the excess will be applied to the obligation of other Initial Business, or if the Initial Business obligation has been fulfilled, Finder's Fees will be charged.

16. All conditions precedent to the commencement of this action have been performed by Plaintiffs or same have been waived by the conduct of Defendant.

## COUNT I
## BREACH OF CONTRACT

17. Plaintiffs reaver and reallege paragraphs 1 through 16 above as if set forth fully herein.

18. Defendant JKN breached the Franchise Agreement by (a) failing to provide replacement accounts, at production rates within industry standards, within a reasonable period of time, (b) interfering with accounts serviced by Plaintiffs and (c) imposing chargebacks in amounts exceeding that permitted by the Franchise Agreement.

19. Plaintiffs have been damaged by such breaches in excess of $75,000.00.

20. Plaintiffs have performed in accordance with the Franchise Agreement and related documents between the parties, or such performance has been waived and/or excused by reason of Defendant's breaches and unfair and deceptive practices as set forth fully below.

21. Plaintiffs have retained undersigned counsel to represent them in this matter and are obligated to pay a reasonable fee for said representation, which amount Defendant is obligated to pay in accordance with the terms and provisions of the Franchise Agreement.

WHEREFORE, Plaintiffs demand judgment against Defendant in excess of $75,000.00, and for award of court costs, interest, reasonable attorneys fees, and for such other and further relief as this Court deems appropriate.

## COUNT II
## VIOLATION OF TEXAS UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

22. Plaintiffs reaver and reallege Paragraphs 1 through 16 above as if set forth fully herein.

23. Defendant is a "person" as defined by § 17.45(3) of the Texas Deceptive Trade Practices and Consumer Protection Act.

24. The franchise agreement at issue in this litigation constitutes "trade" or "commerce" within the meaning of §17.45(6) of the Texas Deceptive Trade Practice and Consumer Protection Act.

25. Plaintiffs are "consumers" and "business consumers" within the meaning of §17.45(4) and (10) of the Texas Deceptive Trade Practices and Consumer Protection Act.

26. Defendant violated §17.46 and are liable for damages under §17.50 of the Texas Deceptive Trade Practices and Consumer Protection Act by engaging in deceptive and unconscionable acts and practices against Plaintiffs.

27. Defendant intentionally interfered with Plaintiffs' customers in an effort to induce those customers to request transfers to other franchisees, thereby benefitting from the Finder's Fee

to be paid by the transferee. If the transferee did not yet receive all of the Initial Business under their franchise agreement, then Defendant would benefit from its transfer of a customer to another franchisee by applying the same business previously offered to Plaintiffs to another franchisee's Initial Business. This deceptive practice is known as "churning" accounts.

28. As a direct, proximate and foreseeable result of Defendant's violation of §17.50 of the Texas Deceptive Trade Practices and Consumer Protection Act., Plaintiffs have been damaged.

29. Plaintiffs are entitled to recover attorneys' fees pursuant to Texas Statute §17.50(d).

WHEREFORE, pursuant to §17.50 of the Texas Deceptive Trade Practices and Consumer Protection Act, Plaintiffs request that this Court enter a judgment in their favor and against Defendant, for three times the actual damages sustained by the aforementioned violations, including, but not limited to, lost profits, loss of future profits and loss of goodwill, together with court costs and reasonable attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT III
## DECLARATORY ACTION

30. Plaintiffs reaver and reallege Paragraphs 1 through 16 above as if set forth fully herein.

31. The parties have reached significant irreconcilable differences arising from the following term in the form Franchise Agreement:

> 5.1 Franchisee ... agrees that during the term of this Agreement, and for a continuous uninterrupted period commencing upon expiration or termination of this Agreement, regardless of the cause for termination, and continuing for (2) years thereafter, ... Franchisee ... shall [not], directly or indirectly, ...(c) Own, maintain, operate, engage in or have any interest in any business

which is the same as or similar to the franchised business, which business is, or is intended to be, located within the territory of this Agreement; or in any other territory covered by a JANI-KING Franchise Agreement for a period of one (1) year.

32. Specifically, Plaintiffs contend that this non-competition term is unconscionable and unenforceable as against public policy.

33. Plaintiffs contend that Defendant could not justify such protection given the control it maintains over the accounts and the franchisees. Furthermore, Defendant lacks any substantial advertising or promotion in the Nashville area and reserves the right to compete in the same area as the franchisee. If the franchise agreement terminates, then Plaintiffs desire to pursue other opportunities in the cleaning business and should not be foreclosed from doing so based on the limited services provided by JKN.

34. The parties have also reached significant irreconcilable differences arising from paragraph 4.3.1 quoted above.

35. Specifically, Plaintiffs contend that JKN is obligated to continue to offer business to Plaintiffs, with royalties to be paid to JKN, but without finder's fees, at the level purchased by Plaintiffs for the term of the Franchise Agreement and that paragraph 4.17 quoted above applies only to business that has cancelled prior to the twelve month term of the service agreement with any particular customer.

36. While JKN does "not guaranty that the Initial Business will reach or remain at the stated level of the plan you purchase through the term of the Franchise Agreement [paragraph 6.1.2]," a fair reading of the Agreement suggests that JKN is obligated to continue to offer the franchisee such business so that the franchisee has the opportunity to maintain gross monthly billings

at the level of the Plan purchased, for the term of the Franchise Agreement and not simply the initial twelve month period.

37. In contrast, JKN contends that it has fulfilled its obligation to offer business to Plaintiffs (with royalties but without finder's fees) by simply providing initial business that will amount to $4000 by the end of the Initial Offering Period.

38. JKN's interpretation would permit JKN to fulfill the Initial Business within the 150 day Initial Offering Period and then transfer all of that business to another franchisee, leaving the franchisee whose business was transferred with nothing left to gain from its franchise and making the twenty year term superfluous.

39. The controversy between the parties is ripe for adjudication at this time. Plaintiffs will suffer significant and irreparable harm if JKN is permitted to enforce the non-competition clause in the franchise agreement and is not obligated to continue to offer accounts to Plaintiffs as contemplated by the parties at the signing of the franchise agreement.

WHEREFORE, Plaintiffs demand judgment against Defendant declaring that paragraph 5.1(c) of the Franchise Agreement is unenforceable and awarding attorneys' fees, costs of suit, and such other relief as this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues triable as of right to a jury.

Respectfully submitted,

*[signature]*

DAENA GOLDSMITH RAMSEY
State Bar No. 08093970

SCHELL, QUILLIN, MITCHEL & COOLEY, L.L.P.
14185 Dallas Parkway, Suite 1000
Dallas, Texas   75254
214/665-2000
214/754-0060   FAX

ATTORNEYS FOR PLAINTIFFS BERNICE E. RAINS
AND ANITA HYCHE-RAINS

Of Counsel:

Lawrence V. Ashe, Esq.
Florida Bar No. 932280
ZACK KOSNITZKY, P.A.
Bank of America Tower
100 S.E. 2nd Street, Suite 2800
Miami, Florida  33131-2144
Telephone: (305) 357-8420
Facsimile:  (305) 357-8520
e-mail:  **lva@zacklaw.com**